Simone Corporation v. Commissioner.
Simone Corp. v. Commissioner
Docket No. 20230.
United States Tax Court
1951 Tax Ct. Memo LEXIS 346; 10 T.C.M. (CCH) 110; T.C.M. (RIA) 51037; January 25, 1951
Murray M. Weinstein, Esq., 60 Park Pl., Newark 2, N.J., for the petitioner. John E. Mahoney, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: By this proceeding petitioner challenges respondent's determination of a penalty of $1,389.83 for failure to file a timely personal holding company return for the taxable year September 6, 1944, to August 31, 1945. Petitioner concedes liability for the deficiency in tax, but contends its failure to file the return was due to reasonable cause and not to wilful neglect. Findings of Fact Petitioner, incorporated in 1944, filed a delinquent *347 personal holding company return on January 28, 1947, for the taxable year September 6, 1944, to August 31, 1945, with the collector of Internal Revenue for the first district of New Jersey. Prior to the year 1944 General Plating Company was a partnership composed of Morris, Irving, and Samuel Mines, all brothers, and Sol Klinghoffer, their brother-in-law. In 1944 Samuel, Morris, and their niece, Gloria Mines, decided to form a corporation to purchase a building and machinery from Irving, Gloria's father, for the purpose of leasing them to General Plating at $10,000 per year. In connection with their plans for incorporation they employed an attorney named Herbert Levy and an accountant named Joseph P. Klatzkin. Levy prepared all documents required to carry out the incorporation, including the stock certificates. Klatzkin was consulted concerning whether it was legal to go ahead with the corporation, and gave his opinion in the affirmative. On or about September 6, 1944, preliminary conferences were held which Klatzkin attended. Stock certificates were subsequently issued during an organization meeting in Levy's office at which Klatzkin was not present. As incorporated, petitioner *348 had outstanding 100 shares of stock held as follows: Stockholder
Shares
Gloria
60
Samuel
20
Morris
20
Petitioner's books and records, including the stock certificate book, were kept in a safe in the office of General Plating to which Klatzkin had access. He was employed by petitioner to keep the books of account and prepare the tax returns. Petitioner and its officers and stockholders did not inform their accountant, Klatzkin, as to the manner in which the stock was actually issued, did not advise him as to all the facts relevant to the question of petitioner's status as a personal holding company, have no knowledge as to whether or not he obtained that information, and did not question him concerning petitioner's status as a personal holding company. He did not mention to them the possibility that petitioner would be liable for the tax. Petitioner was a personal holding company within the meaning of section 501, Internal Revenue Code, during the period in question. Petitioner filed an income and declared value excess profits tax return for the taxable year September 6, 1944, to August 31, 1945, in which it reported its "Kind of business" *349 as "Real Estate." The $10,000 in rents from General Plating was its only income. Schedule F, "Compensation of Officers," which included a space for the percentage of corporate stock owned by each officer, was left blank. The answer "no" was given to question 7: "7. Is the corporation a personal holding company within the meaning of section 501 of the Internal Revenue Code?" * * * (If so, an additional return on Form 1120H must be filed). Question 9 is as follows: "If this is not a consolidated return: (a) did the corporation own at any time during the taxable year 50 percent or more of the voting stock of another corporation either domestic or foreign? -; or (b) did any corporation, individual, partnership, trust, or association own at any time during the taxable year 50 percent or more of the corporation's voting stock? - (If either answer is 'yes' attach separate schedule showing: (1) Name and address; (2) percentage of stock owned; (3) date stock was acquired; and (4) the collector's office in which the income tax return of such corporation, individual, partnership, trust, or association for the last taxable year was filed.)" Question 9(a) was answered *350 "No." Question 9(b) was not answered. At the bottom of page 1 of the return appears the following: "AFFIDAVIT. (See Instruction E) "I/we swear (or affirm) that I/we prepared this return for the person named herein and that the return (including any accompanying schedules and statements) is a true, correct, and complete statement of all the information respecting the tax liability of the person for whom this return has been prepared of which I/we have any knowledge. "Subscribed and sworn to before me this - day of -, 194 194 (Signature of person preparing the return) (Signature of person preparing the return) (Name of firm or employer if any) "NOTARIAL "SEAL "(Signature of officer administering oath) (Title)" That affidavit was left blank. Gloria Mines, as president, and Samuel Mines, as secretary, signed the return, subscribing and swearing before a notary public that they had examined the return and that it was true, correct and "complete." The information disclosed on the return was not sufficient to suggest that petitioner was a personal holding company. The affidavit for the person preparing the return was likewise left blank on petitioner's excess profits *351 tax return filed November 7, 1945, and its delinquent personal holding company return filed January 28, 1947, which were both prepared by Klatzkin. Klatzkin knew that he was required to sign tax returns prepared by him. After a draft of the income and declared value excess profits tax return was prepared partly by Klatzkin and partly by others in his office, it was typed, checked, and mailed by the stenographer directly to petitioner with the following instructions: "Have same signed by two officers of the company indicated by X. Have signatures notarized; affix corporate seal; mail with check to collector of internal revenue, Camden, N.J., before November 15, 1945." These instructions were signed "Office of Joseph P. Klatzkin, Certified Public Accountants." The person or persons who actually prepared the part of petitioner's returns dealing with its status as a personal holding company did not consult with Klatzkin either to ascertain the facts nor to receive his instructions as to how the returns were to be prepared or what returns were to be prepared and filed. No advice was given to petitioner on the subject of filing personal holding company returns, and the matter was not discussed *352 between Klatzkin and petitioner or any of its officers. Klatzkin graduated from the University of Pennsylvania in 1926, and took some postgraduate work there. He was employed for six months as head bookkeeper in a wholesale concern, and for four years as an accountant with Samuel Leopold & Co., an accounting firm. In 1930 he became a certified public accountant and went into business for himself. Shortly thereafter he obtained a "treasury card," and he has appeared on behalf of taxpayers in matters before the Bureau Internal Revenue's Technical Staff. He has never been admitted to practice before the Tax Court. Klatzkin is a member of the New Jersey Society of Certified Public Accountants and of the Institute of Accountants. Prior to petitioner's incorporation and since about 1938, Klatzkin was employed by General Plating to keep its books, prepare its tax returns, and handle any other tax matters which might arise. He rendered the same services for the partners individually. Samuel Mines (who became petitioner's vice-president and secretary) knew that Klatzkin was a certified public accountant; that the partners and partnership were satisfied with his prior services; and that *353 he had had tax experience. Samuel Mines did not know of any specific tax matters handled by Klatzkin for persons other than the Mines family or their partnership. Klatzkin did not make any representation or statement to Samuel Mines concerning his competency to advise on questions of tax liability. In his notice of deficiency respondent determined a surtax liability and deficiency of $5,559.31 (the delinquent return having reported no tax due), and assessed a 25 per cent penalty. "* * * in accordance with the provisions of section 291 of the Internal Revenue Code for failure to file a personal holding company return (form 1120H) within the time prescribed by law." Petitioner's failure to file a timely personal holding company return for the taxable year was due to wilful neglect and not to reasonable cause. Opinion In all of its essential elements the question of petitioner's liability for failure to file personal holding company returns is comparable with that considered in 1040 Springfield Avnue Corp. v. Commissioner (CA-3), 185 Fed. (2d) 406. We have found as a fact that the preparation of the income tax returns was not based upon a *354 full knowledge of all the facts and consequently it may be said here as in Tarbox Corp., 6 T.C. 35, that the failure to file the holding company returns was due "merely * * * to * * * ignorance of the law * * * or * * * to reliance upon an agent to whom insufficient information was disclosed or who likewise was unfamiliar with the requirements of the taxing statute. * * * Neither is sufficient excuse." All of the other elements eliminating reasonable care and pointing to wilful neglect are equally present here, as, for example, that admittedly the return did not on its face indicate that petitioner was a personal holding company or liable for personal holding company tax; that it was stated expressly that petitioner was not a personal holding company; that the question whether stock of petitioner was held by one person to a greater extent than 50 per cent was not followed by a statement of the true facts; that the accountant either failed to consider the question at all or made an obviously inadequate investigation into it, Hermax Co., Inc., 11 T.C. 442, affirmed (CA-3), 175 Fed. (2d) 776; Tarbox Corp., supra; and that the applicability *355 of the personal holding company sections to petitioner and its liability to file returns thereunder are not now contested. On the authority of the cases cited, Decision will be entered for the respondent.