Robert L. MILLER, Mildred M. Miller, et al., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 4567.

United States District Court
D. Wyoming.

Dec. 28, 1962.

James A. Greenwood, Cheyenne, Wyo., for plaintiffs.

Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., and Burton A. Schwalb, Attorney, Department of Justice, Washington, D. C., for defendant.

KERR, District Judge.

Taxpayers brought this action to recover the sum of $7,552.40 which they allege was erroneously, wrongfully and unlawfully collected from them as delinquency and negligence penalties imposed by the government for failure to file their income tax return for the year 1955 within the statutory period and for underpayment of income taxes for the same year. The jurisdictional requirements

of Sections 1340, 1346(a) and 1402(a) of 28 U.S.C. are satisfied.

The material facts are admitted. Taxpayers are husband and wife, who have engaged in the ranching business in Wyoming for over thirty years. They filed their joint federal income tax return for the year 1955 with the District Director of Internal Revenue of Wyoming on February 5, 1960. Based upon this return, the government assessed a tax against taxpayers in the amount of $25,174.69, plus $6,097.67 interest. Pursuant to Sections 6651 and 6653(a) of the Internal Revenue Code of 1954 the government also imposed a delinquency penalty of $6,293.67 and a penalty of $1,258.73 for negligently failing to pay income tax. There is no controversy over the income tax assessment and interest thereon for the year 1955. On April 18, 1960, taxpayers paid the assessed tax, interest and penalties. Thereafter they filed their claim for refund of the penalties collected. On March 14, 1961, the government denied said claim.

In support of their claim for refund of such penalties taxpayers contend that the delinquency which occurred in filing their 1955 tax returns was due to reasonable cause and that any underpayment of their income taxes was not due to their wilful neglect nor intentional disregard of the rules and regulations within the meaning of Sections 6651 and 6653(a) of the 1954 Code.

The crux of the case is whether or not taxpayers were justified in relying exclusively on their attorney whom they had retained to prepare, compute and file their tax returns. If the admitted delinquency and negligence of the attorney is not imputable to taxpayers, then they are not liable for the payment of the penalties assessed against them. The government takes the position that under the circumstances, taxpayers are not entitled to relief because they should have known that their 1955 return had not been filed.

The burden to establish that the failure to file their return was due to reasonable cause is upon the taxpayer. Sanders et al. v. Commissioner of Internal Revenue, 10 Cir., 225 F.2d 629 (1955). Reasonable cause has been defined as ordinary business care and prudence. Treas.Reg. 103, Sec. 19.291–1; Sanders et al. v. Commissioner of Internal Revenue, supra, 225 F.2d at page 636. Whether taxpayers have sustained their burden is a question of fact for this court to decide.

It was clearly established by the evidence that taxpayers were successful in the ranching and livestock business. They were credited with practical business acumen. Theirs is a large ranch of about 50,000 acres, located near Big Piney, Wyoming, approximately one hundred miles from where their lawyer lived. Generally speaking, ranching is their full time occupation. They live on the ranch. Taxpayers were not tutored in the law; they had been ranchers all their lives. Their attorney knew them and knew that they relied on him for their legal matters. They paid no attention to what was expected of them after they had given their attorney the information and data he requested. As is perfectly normal, they left the rest up to him. That they were not indifferent to their obligations under the tax laws is shown by the consistency with which they referred all their income tax problems to qualified parties.

The evidence supports their confidence in their chosen lawyer. He had a law degree from a reputable law school; he had practiced law in Wyoming since 1931; he was then (1955) President of the Wyoming State Bar; and he had experience in preparing income tax returns for clients in the livestock business as well as for other businesses since 1933. From 1933 to about 1957 none of the returns which he had prepared had ever been rejected because of faulty preparation or incompetent filing of the returns.

Prior to 1949 taxpayers' returns were prepared by the cashier of the bank in Big Piney and after his death, by an accounting firm in Salt Lake City, Utah. The first legal work which their lawyer

did for them was in 1945. In 1948 he first did their income tax work. From and after 1948 he also filed their tax returns. The procedure in which taxpayers and their attorney prepared to comply with the tax laws followed a uniform pattern. There is no dispute that taxpayers gave their attorney the information and data he requested; that he thereupon prepared the tax returns; that he would advise them of the amount due; that they would sign the returns and write a check for the tax and that their attorney would mail it. The record shows that the taxpayers cooperated with their attorney whenever he asked for anything. They did not volunteer information or ask questions because they relied on him exclusively to take care of their tax obligations under the laws, rules and regulations.

Though their attorney admitted that he knew that he had failed to file taxpayers' 1955 returns within the time fixed by law, he testified that he did not advise them of their delinquent status. As a matter of fact, he actually encouraged them to believe that he was working on their returns currently and gave them every reason to rely on and trust him. He testified that the taxpayers had given him the information he needed to prepare and file their 1955 return but he just didn't get around to take care of it. In February or March of 1957 he told taxpayers that he still had some work to do on their tax matters but no mention was made of what year he was referring to. It was not until 1959 that he told them of their delinquencies, at which time he advised them to get someone else to take care of their current tax matters as well as their delinquent returns. He told them this when he went out to their ranch, taking an accountant with him whom he recommended to them. Until this date taxpayers had no reason to doubt or question the legal ability or professional integrity of their attorney. Even when an agent of the Internal Revenue Service called on Mrs. Miller at the ranch in 1957 he did not advise her that their tax returns were delinquent, nor from their conversation did she get the impression that there was something amiss concerning their tax matters.

Immediately upon learning from their attorney that they were delinquent, taxpayers employed a firm of certified public accountants to prepare and file their return. It was imperative that they again rely on others than themselves to handle the complicated tax problems incident to the ranching business.

There was uncontroverted evidence that the taxpayers thought that their attorney had prepared and filed their income tax returns annually from 1948 to 1959. It was the testimony of Mrs. Miller perhaps she should have thought it strange that they didn't have to sign tax returns for certain years, but that they actually did not give it much thought. The government contends that the taxpayers should have thought about it, should have made inquiries, and failure to do so is equivalent to failure to exercise ordinary business care and prudence.

What specialists in tax law expect laymen to think is not the standard of care required by the law. It is reasonable to require a higher degree of care and attention of tax experts and attorneys than of laymen. Taxpayers have sustained their burden to show reasonable cause for their failure to file their tax returns for the year 1955 in time. Having no knowledge of the tax laws, taxpayers employed and relied on the expert knowledge of their attorney which in itself evidences their care and attention to their duties under the income tax laws. The lawyer whom they employed had the reputation for competency and ability. He had proven himself to be worthy of the confidence in him in the past. They gave him the necessary data. They relied on him. The unequivocal fact is that they did not know that he had failed them and that their 1955 return had not been prepared and filed in due time. Under these circumstances acute vigilance could not have been required of taxpayers.

The record is devoid of any fact or inference of wilful neglect of the laws or of intentional neglect or disregard of the rules and regulations resulting in delinquent filing of the 1955 tax return and in underpayment of income taxes by the taxpayers. Good faith reliance on the advice of counsel by taxpayers complies with the "reasonable cause" provisions of the statute.

The Second Circuit used language appropriate to this case in Haywood Lumber & Mining Co. v. Commissioner of Internal Revenue, 178 F.2d 769 (1950). 178 F.2d at page 771 the court said:

"When a corporate taxpayer selects a competent tax expert, supplies him with all necessary information, and requests him to prepare proper tax returns, we think the taxpayer has done all that ordinary business care and prudence can reasonably demand. * * * The courts have recognized that reliance on the advice of counsel or of expert accountants, sought and received in good faith is 'reasonable cause' for failing to file a tax return."

The Tenth Circuit in Davis et ux. v. Commissioner of Internal Revenue, 184 F.2d 86 (1950) followed the rationale in the Haywood case. Judge Pickett speaking for the court 184 F.2d at page 88, and after quoting with approval from the Haywood case, stated:

"* * * It is a matter of common knowledge that very few people are familiar with the income tax laws and regulations. Most of them resort to expert advice in the preparation of their returns. * * * To hold a taxpayer guilty of fraud, who without actual knowledge that a return is false, and after a full disclosure to the expert preparing the same, would be untenable."

For the foregoing reasons, I am of the opinion that the failure of taxpayers to file their 1955 income tax return until 1960 was due to reasonable cause so as to avoid the imposition of the penalty under Section 6651 of the Internal Revenue Code of 1954; and that their failure to pay their 1955 tax liability until 1960 was not due to negligence or wilful disregard of the rules and regulations within the meaning of Section 6653(a) of the Internal Revenue Code of 1954. Taxpayers are entitled to the refund prayed for in count One of their complaint. The issues raised in counts Two and Three of plaintiff's complaint are not before the court at this time, the permission of the court having been given counsel to postpone hearing on said counts to a later date.

This opinion sufficiently states the Findings of Fact and Conclusions of Law of the Court. Further Findings of Fact and Conclusions of Law are not necessary. Counsel for taxpayers, in collaboration with the government's attorneys, will submit proposed judgment within fifteen (15) days from this date and the Clerk will enter an order accordingly.